UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| |
|---|
| NY STONE MANHATTAN, LLC,<br><br>                    Plaintiff,<br><br>        -against-<br><br>COWAN LOGISTICS, LLC, 5 STAR<br>LOGISTICS, INC.,<br><br>                  Defendants. |

23-CV-2850-LTS

<u>MEMORANDUM ORDER</u>

Plaintiff NY Stone Manhattan, LLC ("Plaintiff") brings this action asserting

claims for breach of contract ("Count II" and "Count III") against Cowan Logistics, LLC

("Cowan") and claims for negligence against Cowan ("Count I") and 5 Star Logistics, Inc. ("5

Star") ("Count IV").  (Docket entry no. 9 (the "Amended Complaint" or "AC").)  Cowan

removed this action from state court on April 5, 2023, pursuant to 28 U.S.C. sections 1442 and

1446.  The Court has subject matter jurisdiction of this action under 28 U.S.C. section 1332.[1]

Pending before the Court is Cowan's motion to dismiss Count I, the negligence

claim against it, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to

state a claim upon which relief may be granted.  (Docket entry nos. 15 (the "Cowan Motion"),

---

[1]     Cowan removed this action on the basis that Plaintiff's state negligence claims were
completely preempted by 49 U.S.C. section 14706 (the "Carmack Amendment"), and that
this action is thus subject to the Court's federal question jurisdiction.  (<u>See</u> docket entry
nos. 1 ("Notice of Removal"), 17 ("Def. Juris. Mem.")).  Although the parties disagree as
to the relevance of the Carmack Amendment here (<u>see</u> docket entry no. 18 ("Pl. Juris.
Mem.")), the Court has since determined that it has diversity jurisdiction of this action
and need not address the parties' contentions regarding the Carmack Amendment or
whether the Court has federal question jurisdiction at this time.  (<u>See</u> docket entry no.
31.)

15-1 ("Def. Mem.").)  The Court has considered carefully the parties' submissions and, for the following reasons, grants the Cowan Motion.

I.      B<small>ACKGROUND</small>

Unless otherwise indicated, the following allegations are taken from the Amended Complaint, all well-pleaded factual content of which is presumed true for purposes of this motion practice.

Plaintiff is a limited liability company in the business of selling high-value stone products.  (See AC ¶¶ 3, 7.)  On May 5, 2022, non-party Mapleton Manor, LLC ("Mapleton") agreed to purchase stone products (the "Products") from Plaintiff for $334,327.60.  (Id. ¶ 7.) Subsequently, Plaintiff hired Cowan to "perform the logistics operations of having the [Products] transported from non-party Stoneland, USA" to Mapleton at a cost of $8,915.00.  (Id. ¶¶ 8, 9.) The contract also obligated Cowan to procure an insurance policy of at least $350,000 to cover the shipment.  (Id. ¶¶ 19, 26.)  Cowan arranged for transportation of the Products with 5 Star, which acted "either as Cowan's agent or as a separate entity."  (Id. ¶ 33.)

The Products were in good condition at the time they were loaded for transportation from Stoneland, USA, but were "damaged and unusable" when they arrived at Mapleton.  (Id. ¶¶ 10-12, 34.)  Because Mapleton could not use the Products for the intended purpose in the condition in which they arrived, Mapleton returned the Products, requiring Plaintiff reimburse them the $334,327.60 cost.  (Id. ¶¶ 12-13.)  Plaintiff alleges that, "due to the negligence of COWAN" or its "agents," the Products were damaged during transportation and, as a result, Plaintiff was damaged in the amount of at least the cost of the Products and the transportation fees, totaling $343,242.60.  (Id. ¶¶ 14-17).  Plaintiff alleges that "either Cowan, or

the carrier after arrangement or brokerage by Cowan, or all Defendants acting in concert, failed to protect [the Products] from damage while in transit." (Id. ¶ 15.)

## II.   DISCUSSION

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted, a complaint must plead "enough facts to state a claim to relief that is plausible on its face," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007), and "allow [] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  In deciding a Rule 12(b)(6) motion to dismiss, the Court must "draw all reasonable inferences in [p]laintiff's favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief."  Faber v. Metro. Life Ins. Co., 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted).  "In adjudicating a motion to dismiss, a court may consider only the complaint, any written instrument attached to the complaint as an exhibit, any statements or documents incorporated in it by reference, and any document upon which the complaint heavily relies."  ASARCO LLC v. Goodwin, 756 F.3d 191, 198 (2d Cir. 2014) (citation omitted).[2]

Defendant Cowan's motion to dismiss the negligence claim rests entirely on the doctrine of federal preemption, asserting that Count I of the Amended Complaint is preempted by 49 U.S.C. section 14501(c)(1), the Federal Aviation Administration Authorization Act of 1994 (the "FAAAA").[3]  "[A] district court may grant a motion to dismiss based on federal preemption

---

[2]   For this reason, the Court considers Exhibit B of Defendant's memorandum of law—the Cowan Logistics Load and Rate Confirmation dated June 1, 2020 (docket entry no. 15-3 ("Def. Mem. Ex. B"))—as incorporated by reference.

[3]   The Cowan Motion does not invoke the Carmack Amendment.

if the defense can easily be determined from the pleadings." Marentette v. Abbott Lab'ys, Inc., 201 F. Supp. 3d 374, 377 (E.D.N.Y. 2016) (citation omitted), aff'd, 886 F.3d 112 (2d Cir. 2018).

The FAAAA provides, in relevant part, that:

> [A] State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . or any motor private carrier, broker, or freight forwarder with respect to the transportation of property.

49 U.S.C.A. § 14501(c)(1) (Westlaw through P.L. 119-80) (emphases added).

"Under the Supremacy Clause of the Constitution, state and local laws that conflict with federal law are 'without effect.'" N.Y. SMSA Ltd. P'ship v. Town of Clarkstown, 612 F.3d 97, 103 (2d Cir. 2010) (per curiam) (quoting Altria Grp., Inc. v. Good, 555 U.S. 70, 76 (2008)). Where, as here, a statute contains an express preemption clause, the Court "must in the first instance focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent." CSX Transp., Inc. v. Easterwood, 507 U.S. 658, 664 (1993); see also N.Y. SMSA Ltd. P'ship, 612 F.3d at 104 ("The key to the preemption inquiry is the intent of Congress."). The "plain wording" of the FAAAA requires dismissal of Count I against Cowan: Plaintiff's claim is clearly related to Cowan's services as either a broker or carrier, and the duty it seeks to impose is inextricably tied to the transportation of property by a motor carrier.

Plaintiff's claim is preempted because it is plainly "related to" both the "service of" a motor carrier or broker and the "transportation of property." See 49 U.S.C. § 14501(c)(1). The Supreme Court has interpreted the phrase "related to" as having a "broad preemptive purpose." See Morales v. Trans World Airlines, Inc., 504 U.S. 374, 383 (1992) (interpreting a nearly identical provision, "relating to," of the Airline Deregulation Act ("ADA")); Rowe v. N.H.

Motor Transp. Ass'n, 552 U.S. 364, 370-71 (2008) (explaining that interpretations of the ADA's preemption provision directly apply to the FAAAA).  To be "related to" broker or carrier services, the state law in question need only have a "connection with, or reference to" those services.  Rowe, 552 U.S. at 370 (quoting Morales, 504 U.S. at 384).  And, while inclusion of the phrase "with respect to the transportation of property" in the FAAAA, as opposed to the ADA's broader preemption provision, does "massively limit[] the scope of preemption ordered by the FAAAA," Dan's City Used Cars, Inc. v. Pelkey, 569 U.S. 251, 261 (2013) (internal quotation marks and citations omitted), this addition also makes plain that the FAAAA preempts any state law related to services for the transportation of property.[4]

Plaintiff appears to assert that Cowan negligently breached two duties: (1) "to protect [the Property] from damage while in transit while it was in their care and custody" and (2) "to deliver the equipment in the same order and condition as when they received it."  (AC ¶ 15.)  Count I is aimed directly at the core services of brokers and carriers, as defined by the FAAAA: transporting property and, in so doing, handling that property.  See 49 U.S.C. § 13102(23)  (defining "transportation" broadly as "services related to" the "movement [of] . . . property," including "arranging for," "delivery," and "handling").[5]

---

[4]    The overarching statutory structure of the FAAAA also suggests that Congress intended it to preempt state negligence claims of this kind: Congress penned a specific carveout for laws that "apply to the intrastate transportation of household goods," implicitly confirming the legislature's intent to preempt laws relating to the intrastate transportation of commercial goods, like the Products here.  49 U.S.C. § 14501(c)(2)(A) (emphasis added); see id. § 13102(10) (defining household goods as "personal effects and property used or to be used in a dwelling").

[5]    See also 49 U.S.C. § 13102(2) (defining a "broker" as a "person . . . [who] holds itself out . . . as selling, providing, or arranging for, transportation by motor carrier for compensation."); id. §13102(14) (defining "motor carrier" as "a person providing motor vehicle transportation for compensation"); id. § 13102(23) (defining "transportation" as "services related to [the movement of passengers or property], including arranging for,

Because Cowan's transportation, or brokerage of the transportation, of property is the subject of Plaintiff's claim, the plain language of the FAAAA preempts Count I.[6]  See Ye v. GlobalTranz Enters., Inc., 74 F.4th 453, 457-60 (7th Cir. 2023) (negligent hiring claim against a broker "falls within § 14501(c)(1)'s express prohibition"); Aspen Am. Ins. Co. v. Landstar Ranger, Inc., 65 F.4th 1261, 1266-68 (11th Cir. 2023) ("[T]he [Act] makes plain that [the plaintiff's] negligence claims relate to a broker's services with respect to the transportation of property."); Miller v. C.H. Robinson Worldwide, Inc., 976 F.3d 1016, 1024 (9th Cir. 2020) ("[A] claim that imposes an obligation on brokers at the point at which they arrange for transportation by motor carrier has a 'connection with' broker services."); Cox v. Total Quality Logistics, Inc., 142 F.4th 847, 853 (6th Cir. 2025) (negligent hiring claims "plainly 'concern' the transportation, or movement, of property").

While the FAAAA "does not pre-empt state laws that affect rates, routes, or services in 'too tenuous, remote, or peripheral a manner,'" Rowe, 552 U.S. at 375 (quoting Morales, 504 U.S. at 390), a state law may nonetheless be preempted even when its effect "is only indirect." Id. at 370 (quoting Morales, 504 U.S. at 386).  Here, the effect of state negligence

---

receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, storage, handling, packing, unpacking, and interchange of passengers and property."

[6]     Whether Cowan acted as a broker, a carrier, or both in connection with Plaintiff's shipment is immaterial to the preemption question that is before the Court; the statute defines a broker broadly as a person both "providing" and "arranging for" "transportation by motor carrier for compensation." 49 U.S.C. § 13102(2).  It is clear from the Amended Complaint, and parties do not dispute that, at bottom, Cowan arranged for the transportation of the Products.  And while the Court agrees with Plaintiffs that discovery may reveal that Cowan acted as a carrier in some capacity, for example in delivering the products from Plaintiff's New Jersey location to Mapleton, that fact is immaterial to the instant motion because Cowan's conduct was, in any event, inextricably tied to the transportation of property.  (See Def. Mem. Ex. B.)  Count I is thus preempted.

standards is more than indirect.  Plaintiff's claim is not "based on facts that are sufficiently attenuated from [Cowan's] decisions about price, route, or service, so as to make preemption inapplicable."  See Freightliner Custom Chassis Corp. v. Landstar Ranger Inc., 8:20-CV-1390 (FJS/CFH), 2022 WL 252390, at *5 (N.D.N.Y. Jan. 27, 2022) (citing Covenant Imaging, LLC v. Viking Rigging & Logistics, LLC, No. 3:20-CV-00593 (KAD), 2021 WL 973385, at *6 (D. Conn. Mar. 16, 2021)) (finding negligent hiring claim was not preempted).  In fact, imposing tort liability for mishandling products during transportation is directly related to service decisions: in an effort to avoid monetary judgments, Cowan might, for instance, refuse to transport particularly delicate cargo it otherwise would have shipped.  Cf. Ye, 74 F.4th at 459 (reasoning that "subjecting a broker's hiring decisions to a common-law negligence standard would have significant economic effects" and change broker behavior); Chan v. U.S. Dep't of Transp., 23-CV-10365 (LJL), 2024 WL 5199945, at *31 (S.D.N.Y. Dec. 23, 2024) (collecting cases and concluding that, in determining FAAAA preemption questions, "courts have primarily focused on . . . whether the state or local law compels the carrier to provide or not provide a certain price, service, or route than it would otherwise choose").  Because liability would attach to some services but not others, enforcing common law negligence principles would directly affect what services brokers and carriers decide to offer, and at what price.

Plaintiff offers two district court cases for the proposition that "the FAAAA does not preempt common law negligence claims."  (Pl. Mem. at 4.)  Yet the holdings in both cases go to issues different than those presented here.  In Covenant Imaging, the plaintiff claimed that the defendant negligently brokered transportation to a carrier that lacked the "requisite skills"; the court held that this claim was not preempted because the duty invoked there "says nothing about what services brokers may provide."  2021 WL 973385, at *5-6.  Such a duty is general: any

business that delegates work to another entity must delegate to those capable of the task assigned to them, and so this duty is not specific to carriers and brokers that transport property, and it does not affect what routes or services they provide.  In Freightliner, the plaintiff alleged defendant was negligent for brokering transportation to a fatigued driver, and the court, citing Covenant Imaging, found that the regulation of impaired driving was too far removed to support preemption.  2022 WL 252390, at *5 ("The Court adopts the District of Connecticut's reasoning from Covenant Imaging.").  This finding is consistent with the holding of Freightliner: that "common law negligence claims against brokers that breach a general duty of care not otherwise related to prices, routes, or services" are not preempted by the FAAAA.  Id. at *5 (quoting Covenant Imaging, 2021 WL 973385, at *6).  There, the duty to drive unimpaired would not vary based on whether the motorist was a carrier or broker, the route chosen, or what goods, if any, a motorist was transporting.  See also Chan, 2024 WL 5199945, at *11, *33-34 (reasoning that a tolling program that would set prices based on a vehicle's contribution to congestion was not preempted because it affected "each vehicle trip," no matter the vehicle type, and thus "does not bind motor carriers to undertake any particular service or route or charge a certain price").  By contrast, the negligence liability principles invoked in Count 1 are directly related to the brokerage or performance of property transportation services and could thus affect choice of routes by, for example, incentivizing carriers to choose low-speed or non-winding routes to avoid damage to goods.

Finally, laws that "could easily lead to a patchwork of state service-determining laws, rules, and regulations" must be preempted as they "produce the very effect that [the FAAAA] sought to avoid."  Rowe, 552 U.S. at 372-73.  Common law negligence is one such example.  See Dan's City, 569 U.S. at 263 ("The target at which [the FAAAA was] aimed was 'a

State's direct substitution of its own governmental commands for competitive market forces in determining (to a significant degree) the services that motor carriers will provide.'" (quoting Rowe, 552 U.S. at 372)).  The Second Circuit has held that "[t]he House Conference Report that accompanied the legislation" is indicative of the preemptive scope that Congress intended the FAAAA to have.  Ace Auto Body & Towing, Ltd. v. City of New York, 171 F.3d 765, 772 (2d Cir. 1999).  Congress stated that the need for the FAAAA "has arisen from [a] patchwork of regulation" at the state level and that "[l]ifting of these antiquated controls" will ensure that "[s]ervice options will be dictated by the marketplace; and not by artificial regulatory structure." H.R. Rep. No. 103-677, at 86, 88 (1994) (Conf. Rep.), as reprinted in 1994 U.S.C.C.A.N. 1715, 1758, 1760.

Here, the state law would create a patchwork: "it does not affect truckers solely in their capacity as members of the general public, the impact is significant, and the connection with trucking is not tenuous, remote, or peripheral" because a common law negligence claim "aim[s] directly at the carriage of goods, a commercial field where carriage by commercial motor vehicles plays a major role."  Rowe, 552 U.S. at 375-76 (holding that state law requiring tobacco shippers to utilize delivery companies with recipient-verification services was preempted). Because the duty of care is an industry-specific standard—the duty of a common motorist is different from the duty of a broker or motor carrier with regard to handling of goods during transport—enforcing it would necessarily create a patchwork of standards both within a state (i.e. across industries) and nationally.  Cf. Chan, 2024 WL 5199945, at *29 (finding that tolls, though a "quintessential patchwork policy," affected all motorists, not just motor carriers, and thus that a state tolling program was not preempted).  Because the conduct regulated by this negligence

claim is specific to motor carriers and brokers engaged in effecting the transportation of property, Count I is preempted by the FAAAA.

### III.    CONCLUSION

For the foregoing reasons, the Court grants Cowan's Motion and dismisses Count I of the Amended Complaint.  Cowan is directed to file an answer to the Amended Complaint **within 21 days of the entry of this Memorandum Order**.  This case will be referred to Judge Sarah Netburn, the designated Magistrate Judge, for general pretrial management.  This Memorandum Order resolves docket entry no. 15.

SO ORDERED.

Dated: New York, New York
         March 31, 2026

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge